No. 36.—TILMAN HOPKINS, plaintiff in error, vs. ROBERT S. BURCH, defendant in error.

[1.] Before a constable can levy on lands and negroes, and to the validity of sales of land and negroes under magistrates' court executions, it is necessary that it appear by the entries on the execution, *that there was no other personal property*, or that *the defendant being in possession, pointed out the land and negroes.*

[2.] Such entries can be made *nunc pro tunc* by the officer who made the levy.

This was a claim case. Tried before Judge WARREN. In Macon Superior Court. At the April adjourned Term, 1847.

Robert S. Burch, the defendant in error, was the plaintiff in execution, and William F. Hopkins and Isaac Hopkins were defendants, and Tilman Hopkins, the plaintiff in error, was the claimant.

The property levied on and claimed, was a lot of land in the County of Macon. At the said adjourned term of the Court below, this cause came on to be tried, when the plaintiff in execution, Burch, introduced Green Barrow as a witness, who testified that as sheriff he levied the execution upon said land, and that at the time of said levy the said William F. Hopkins, one of the defendants in execution, and who was claimant's father, together with the claimant, resided on the said land, and that said William F. seemed to be proprietor; and thereupon the said Burch closed his case.

The claimant then offered in evidence a deed made by the sheriff to one Andrew Shealy, which by virtue of a sheriff's sale of said land, as the property of said William F. Hopkins, under a justice's court *fi. fa.* issued in the said County of Macon, conveyed said land to the said Shealy, and which said justice's court *fi. fa.* was also offered in evidence. The counsel of Burch objected to said *fi. fa.* because there was no entry thereon of " *no personal property to be found*," made by the levying officer. The Court below sustained the objection, and refused to admit said *fi. fa.* in evidence without such entry.

The claimant's counsel then offered to introduce the constable who levied said justice's court *fi. fa.*, to show that at the time of said levy the defendants in the *fi. fa.* had *no personal property*, and also to evidence that fact by a return to that effect, to be entered on said *fi. fa. nunc pro tunc* by said constable, under oath.

The court below refused to allow either the oral testimony of the constable for the purpose aforesaid, or a return of "*no personal property*" to be made by him under oath or otherwise.

The claimant then offered to prove by the said constable that the said land was pointed out to him for levy by the said William F. Hopkins. This also the Court below refused. The case was then submitted to the jury, who rendered a verdict finding the said land subject.

To all which decisions of the Court below, the counsel for the claimant excepted.

Wm. H. Robinson and Wm. P. Greene, for plaintiff in error, contended :

1. That the act of 1811 does not require the constable to make a return of "*no personal property*," before levying upon land or negroes. *Prince* 506; *Dud. R.* 3.

And that if such return were made, it would be no evidence of the fact, the same not being required by statute. 1 *Greenl. Ev.* 498; 3 *Phil. Ev.* 1083, 1046.

The constable having levied on the land, the Court should presume that he had discharged his duty by first looking to the personal estate, and finding that insufficient, had then made his levy. 2 *Phil. Ev.* 297; 19 *Johns. R.* 345; 11 *id.* 517.

2. Admitting, for sake of argument, that the legislature intended that the authority of the officer to levy should appear by proof of the insufficiency of personal estate, the levying officer would be a competent witness to prove the fact.

3. The courts have given a liberal construction to the statute of amendments, and gone far in allowing such returns to be made *nunc pro tunc.*

4. The act of 1811 was passed for the benefit of the debtor, and that he only can take advantage of it. 13 *Johns. R.* 97; 8 *id.* 361; 4 *Kent* 430. And that even previous to the act of 1842, the defendant had the right to point out such property to the officer as he might deem proper.

5. That the neglect of the officer does not affect the purchaser, he depending alone upon the judgment, the levy, and the sale; all other irregularities being between the officer and the parties to the process. 4 *Conn. R.* 521; 3 *Phil. Ev.* 1094.

Warren, for the defendant in error.

Hopkins *vs.* Burch.

*By the Court.*—NISBET, J., delivering the opinion.

The claimant introduced in evidence a deed for the land in question, from the sheriff, being a purchaser at sheriff's sale. The levy was made by a constable, and the magistrate's *fi. fa.* was tendered in evidence by the claimant as part of his title. It was demurred to upon the ground that it had not the constable's official entry of "no personal property to be found," and rejected. The claimant then brought the constable into court who made the levy, and proposed that he should amend his entries, and make the required entry "*nunc pro tunc,*" which the Court refused to permit to be done. He also offered evidence to prove that the defendant in execution pointed out the land to be levied on, which was also rejected. To all these decisions he excepted.

[1.] By the act of 1811, "No constable shall be authorized to levy on any *negro or negroes, or real estate,* unless there is no other personal estate to be found sufficient to satisfy the debt, and then and in that case, they are hereby authorized to levy on the same wherever to be found, &c." *Prince* 506. It is true, as counsel contended, that this act does not make it the duty of the constable, in terms, to make the entry of "no personal property to be found." It prohibits the constable from levying on lands and negroes, unless there is no personal estate (besides negroes) to be found sufficient to satisfy the debt. The entry, therefore, is not made necessary by a positive enactment of the legislature. We think notwithstanding it is necessary. The argument is within a nutshell. The act of 1811 is for the benefit of the defendant in execution, to protect his negroes and lands, being property of great value, from vexatious levy and sale for small amounts—a plantation, for example, worth $5,000, or a slave worth $1,000, for thirty dollars—particularly non-resident defendants—from these petty, and it might be dangerous annoyances. To afford him the protection which this act intends to afford him, it is necessary to give it a liberal construction, as it is not in derogation of common right; for it does not exempt lands and negroes from payment of debts, but only protects them until other property has been exhausted. A fair construction of it would make all sales of lands and negroes, under a magistrate's court execution, illegal, unless there was no other personal property sufficient to satisfy the debt. The severity of this rule upon purchasers is the guarantee of protection to the defendant. Anything

short of this would defeat the benevolent intentions of the legislature. Nor is this a forced, but a natural and necessary construction of the act. It positively enacts, that no constable shall levy upon *any negro or negroes, or real estate, &c.* Now nothing is clearer ·than this, to wit : if a constable does levy upon lands and negroes when there is other personal property sufficient to satisfy the debt, the act is in violation of the law, and void, and so are all titles acquired under it. The constable would be guilty of a trespass, and as to the purchaser, the doctrine of *caveat emptor* applies to him.

The further question however occurs—what shall be *the evidence* that there was no other *personal property?* It must be, in our judgment, official. The officer must show by his levy that he is within the authority conferred by the act. We do not hold that a separate and independent entry should be made, declaratory of the fact that there was no other personal property. It would be sufficient if the levy itself recited the fact. This would be necessary for the protection of the defendant, and indispensable to the safety of purchasers. If the evidence that there was not sufficient other personal estate to satisfy the debt, was allowed to exist in parol—if there was no means of ascertaining *that* with certainty—the most disastrous consequences would follow, both to the defendant and the purchaser. The defendant's property would be liable to sacrifice, honest purchasers, buying in the dark, would in many instances acquire no title, or, fearful of consequences, would stand aloof altogether. If, on the contrary, the fact is required to appear upon the execution, it being open to the inspection of all, all would be notified. This evidence too, being, as we hold, part of the purchaser's title, it ought to be permanent, durable, and safe ; it ought to go with the execution to the files of the office. We are, therefore, clearly of opinion that the Court did not err in sustaining the demurrer to the execution tendered in evidence.

But we do think that the Court erred in not permitting the [2.] officer to amend and make the entry *nunc pro tunc.* Such an ·entry he makes subject to his liability for a false return. It is as a general rule, competent for a sheriff to amend his return before the Court ; to do that now which he ought to have done and could have done before. So long as the sheriff is in office, and parties are protected by his official bond, he may amend his return. This reasoning applies to constables, for they also give bond. In this case particularly, there can be no objection to amending the return, as it is in furtherance of the rights of the purchaser ; and as no

rights, under this levy and sale, had vested in any body else antag-onistic to his.    17 *Pick. R.* 106; 11 *Mass. R.* 413; 13 *Pick. R.* 477; 1 *id.* 461; 21 *id.* 197; 1 *id.* 196; *Needham* vs. *Newsom, Minor* 407; *Marsh. R.* 350; 4 *Har. & McHen. R.* 498; 1 *Cowen R.* 430; 6 *Greenl. R.* 162; 3 *Murph. R.* 128; 3 *Monroe R.* 295; 3 *J. J. Marsh. R.* 500; *Charlt. R.* 284.    And for this error of the Court, this cause must go back.

By the act of 1842, defendants in execution in justice's courts have the right to point out to the levying officer, either lands or negroes in his possession.    This is a modification of the act of 1811, so far as it goes.    It is an authority to the constable to levy on lands and negroes, even if there is sufficient other personal property to pay the debt, if the defendant, being in possession, points them out.    All the reasoning adduced on the act of 1811 applies to 'this.    The claimant proposed to prove by parol that the defen-dant did point out this land for levy and sale, and that it was in his possession.    This he could not do—for as in the other case that the defendant did point out the land, and that it was in his posses-sion, must appear by the officer's entries on the execution.    This, if true, might be made to appear by an amendment *nunc pro tunc,* also.

Let the judgment of the Court below be reversed.